IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

CLARA D. GULLEY                                                                                       PLAINTIFF

vs.                                     CIVIL NO. 05-4002

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION              DEFENDANT

## MEMORANDUM OPINION

Clara Gulley ("plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying her applications for disability insurance benefits ("DIB"), and supplemental security income benefits ("SSI"), under Titles II and XVI of the Act.

**Background:**

The applications for DIB and SSI now before this court were filed on July 10, 2003, and September 18, 2003, respectively, alleging an onset date for purposes of DIB, of May 27, 2003, due to a ruptured cervical disc and a right knee ligament tear.[1] (Tr. 55-57, 312-316). An administrative hearing was held on August 18, 2004. (Tr. 318-340). Plaintiff was present and represented by counsel.

On October 4, 2004, the Administrative Law Judge ("ALJ"), issued a written opinion finding that, although severe, plaintiff's impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 20). At this time, plaintiff was

---

[1] SSI may not be granted prior to a claimant's application filing date, because benefits through an SSI application are allowed only after all regulatory criteria are established, namely after the SSI application is filed. *See* 20 C.F.R. § 416.335; *Jernigan v. Sullivan*, 948 F.2d 1070, 1072 n. 3 (8th Cir. 1991).

thirty-two years old and possessed a high school education, as well as an Associates Degree in Business Technology. (Tr. 13, 323). The record reveals that she has past relevant work ("PRW"), as a life skills' trainer, dietary aide/nurse aide, cashier, and a secretary in a student work-study program. (Tr. 13, 65, 71).

After discrediting plaintiff's subjective allegations, the ALJ concluded that she maintained the residual functional capacity ("RFC"), to perform a full range of light work, which involves lifting and/or carrying at least ten pounds frequently and twenty pounds occasionally, standing and/or walking for at least six hours during an eight-hour workday, and sitting for at least six hours during an eight-hour workday. *See* 20 C.F.R. §§ 404.1567, 416.967. (Tr. 20). Utilizing the Medical-Vocational Guidelines (the "Grids"), the ALJ then concluded that plaintiff retained the capacity to make a successful vocational adjustment to work which exists in significant numbers in the economy. (Tr. 21).

On November 23, 2004, the Appeals Council declined to review this decision. (Tr. 4-6). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 5, 6).

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be

2

affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an

impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (2003).

## **Discussion:**

Of particular concern to the undersigned is the fact that the ALJ concluded that plaintiff had no non-exertional limitations, and as such, was capable of performing a full range of light work. Accordingly, the ALJ then used the Grids to determine that plaintiff was not disabled. However, in cases like this, where the claimant suffers from non-exertional impairments that diminish or significantly limit a claimant's RFC to perform a full range of Guideline-listed activities, the ALJ may not rely solely on the grids, but instead must obtain the opinion of a vocational expert. *See Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005). Examples of non-exertional limitations include obesity, pain, depression, intolerance to dust or fumes, and difficulty performing manipulative or posterior functions such as reaching, handling, stooping, climbing, crouching, or crawling. 20 C.F.R. § 404.1569(c). The United States Court of Appeals for the Eighth Circuit has made the following ruling concerning pain:

> Pain may be a nonexertional factor to be considered in combination with exertional limitations as well as a separate and independent ground for disability. . . . Where pain is considered in combination with exertional limitations, however, it need only be found significant enough to prevent the claimant from engaging in the full range of jobs contemplated by the exertional category for which the claimant otherwise qualifies.

AO72A
(Rev. 8/82)

*McCoy v. Schweiker*, 683 F.2d 1138, 1148 (8th Cir. 1982) (en banc) (reversed on other grounds).

In the present case, the relevant medical evidence reveals the following. In June 2001, plaintiff injured her neck in an automobile accident. (Tr. 15). Dr. Bud Dickson diagnosed her with cervical strain, and administered a steroid injection, prescribed oral medications, and referred her for physical therapy. Plaintiff underwent physical therapy from June 12, 2001, until July 13, 2001, resulting in decreased pain in her neck and right shoulder. However, she continued to have some range of motion limitations in her right cervical area. (Tr. 15). In May 2003, Dr. Michael Young prescribed Skelaxin, Motrin, and ultrasound treatments to treat plaintiff's neck pain. (Tr. 176).

On June 4, 2003, an MRI of plaintiff's cervical spine revealed a small right paracentral protrusion of disc osteophyte complex at the C4-C5 level. (Tr. 118). Dr. Ronald William's[2] evaluation of plaintiff on June 17, 2003, revealed a markedly restricted range of motion in her neck, as well as decreased pinprick sensation in the right C8 distribution. He also noted some questionable weakness in the right deltoid muscle. (Tr. 120).

On June 19, 2003, a myelogram/post-myelogram CT scan showed a ruptured disc on the right side at the C4-5 level, and plaintiff was tentatively scheduled for anterior cervical fusion. (Tr. 119). However, she sought assistance from the Veteran's Administration ("VA"), in Little Rock, Arkansas on July 29, 2003, stating that she could not afford surgery in the private sector. (Tr. 140). Plaintiff complained of neck, right shoulder, back, and knee pain. (Tr. 153). An examination revealed a limited range of motion in the neck and back, and a limited range of motion in the right arm. The resident doctor diagnosed plaintiff with a bulging cervical disc. He then referred her to a neurosurgeon, and directed her to take Tylenol and Ibuprofen for her knee pain. (Tr. 153).

---

[2]Dr. William is an examining, consultative neurosurgeon.

On September 24, 2003, Dr. Susan Tate noted that plaintiff presented with a small ruptured disc at the C4-5 level, myofacial pain, and a limited range of motion in her neck. (Tr. 137). As such, she referred plaintiff for an emergency neurosurgery consult. (Tr. 137). The neurosurgeon examined plaintiff and noted a decreased range of motion in plaintiff's cervical spine, myofacial pain along the trapezius, weakness in the right upper extremity, and decreased senses in the right upper extremity. (Tr. 142). After reviewing her previous test results, the surgeon diagnosed her with neck pain and a herniated disc at the C4-5 level. He then prescribed Medrol, Lodein, Ultram, and Flexeril. (Tr. 142).

On December 15, 2003, Dr. Shilpa Garg ordered physical therapy twice per week for five weeks. (Tr. 230). Between December 15, 2003, and January 4, 2004, plaintiff underwent five physical therapy sessions to include trigger point and myofacial release treatments, electrical muscle stimulation with moist heat, and cervical traction. (Tr. 166-173). However, the physical therapist noted that plaintiff received no benefits from this therapy. (Tr. 166). In fact, the therapist indicated that the exercises made plaintiff's symptoms and pain worse. (Tr. 216).

On January 12, 2004, plaintiff underwent an MRI of her right knee. (Tr. 197). The results showed a tiny radial free edge tear at the junction of the posterior horn and body of the lateral meniscus. (Tr. 198).

On February 11, 2004, plaintiff followed-up with Dr. Lorene Lomax, regarding her knee and neck pain. (Tr. 281). Dr. Lomax noted the results of plaintiff's most recent MRI. (Tr. 281-282). Further, her examination also revealed some pain at the lateral joint line of the right knee, and some pain under the patella when mild pressure was applied. (Tr. 282-283). For this, Dr. Lomax

AO72A
(Rev. 8/82)

prescribed Etodolac.³ She also referred plaintiff to an orthopaedist for further recommendations. (Tr. 283). As for her neck pain, Dr. Lomax referred her for pain management and rehabilitation. (Tr. 283).

On February 18, 2004, plaintiff underwent an orthopaedic consult regarding her knee pain. (Tr. 220). Plaintiff indicated that she twisted her right knee in 1990, when she tripped over an electric cord that had been left on the stairs. At the time, she was in military basic training. Plaintiff stated that she had experienced chronic pain in her knee, since that time. Further, she reported that the pain radiated up her thigh toward her hip, as well as down into her ankle. As a result, plaintiff stated that she had begun shifting her weight from her right leg to her left leg. However, this had caused pain in her left knee, as well. On examination, Dr. Ashley Ross noted that plaintiff had a normal gait, full extension in both knees, and intact ligaments. (Tr. 221). Plaintiff reported discomfort when stretching the right knee or the lateral, collateral, or anteroposterior cruciates. Further, marked discomfort was noted on palpation of the patella, particularly at the lower pose, as well as the anterior lateral joint line. Manipulation of the patella also caused pain. As for the left knee, plaintiff also experienced diffuse tenderness over the knee, with no specific area defined. X-rays of the right knee revealed a small radial peripheral tear of the lateral meniscus, whereas an MRI of the left knee was within normal limits. Accordingly, Dr. Ross referred plaintiff to an orthopaedic surgeon for a possible partial lateral meniscectomy to excise a torn portion of the lateral meniscus. (Tr. 221).

---

³Etodolac is a nonsteroidal anti-inflammatory drug used to relieve the inflammation, swelling, stiffness, and joint pain of osteoarthritis (the most common form of arthritis), and rheumatoid arthritis. Regular Lodine is also used to relieve pain in other situations. PHYSICIAN'S DESK REFERENCE, *at* www.pdrhealth.com.

On April 5, 2004, plaintiff saw Dr. Regina Thurman. (Tr. 217). Plaintiff complained of continued neck pain on the right side that radiated into her shoulder and hand. In addition, plaintiff reported weakness and tingling in her right hand, as well as occasional problems gripping and holding objects in her hand. Although physical therapy had made plaintiff's neck symptoms worse, she reported that her home exercise program had helped on a short-term basis. Plaintiff felt that her symptoms had increased since her last office visit, and she continued to have headaches, starting in the occipital area and radiating into the frontal area with orbital pain that seemed to have increased. She also reported trouble sleeping. Her medications were said to include Tramadol, Etodolac, and Cyclobenzaprine, which were said to help "some." (Tr. 217).

On examination, plaintiff was noted to have an active and passive range of motion in all planes. However, she did experience pain on side flexion to the right. Dr. Thurman also noted tenderness to palpation in the trapezius, cervical paraspinals, and rhomboids. (Tr. 218). Because plaintiff's x-rays were normal, Dr. Thurman gave plaintiff a trigger point injection into the trapezius muscle on the right. Records indicate that plaintiff did experience some relief. As such, she was directed to perform home exercises twice per day, and instructed on additional exercises to help alleviate her tight anterior musculature. (Tr. 265).

On April 19, 2004, plaintiff was treated by Dr. Scott Justesen for bilateral knee pain, with the pain greater in the right knee. (Tr. 261). Some crepitance was noted in the knee, and catching and locking were both positive. Dr. Justesen reviewed plaintiff's previous MRI, and stated that it showed a small radial tear of the right lateral meniscus. As for the left knee, plaintiff reported that the pain was likely secondary to overuse, in an attempt to compensate for the pain in her right knee. An examination of the right knee showed tenderness to palpation along the posterolateral joint line.

8

(Tr. 262). There was also positive pain along the lateral patellofemoral area. Only minimal pain was noted in the medial patellofemoral area. As such, Dr. Justesen diagnosed plaintiff with right knee pain with a right lateral meniscal tear. He then scheduled her for right knee arthroscopy with a possible lateral meniscal debridement. (Tr. 262).

On May 17, 2004, records indicate that plaintiff underwent a right knee scope, with a partial lateral meniscetomy. (Tr. 210, 212). Dr. Shilpa Garg referred plaintiff for crutches, gait training, straight leg raise testing, and range of motion exercises. (Tr. 211). The physical therapist noted that plaintiff was educated on the exercises as prescribed, and was able to demonstrate them appropriately. Accordingly, plaintiff was discharged with goals achieved. (Tr. 211). Plaintiff's limitations were said to include no driving, with the recommendation of icing the knee every two hours, while awake. (Tr. 247).

On May 20, 2004, plaintiff told Dr. William Grammar that she was doing fairly well. (Tr. 243). She reported getting around with her crutches, and tolerating weightbearing activity. On examination, Dr. Grammar noted that the knee was "appropriately swollen." However, the wounds were healing nicely, and there was no erythema. After reinforcing her instruction on range of motion and straight leg raise exercises, Dr. Grammar recommended that she return to the clinic the following Monday. (Tr. 243).

On July 12, 2004, plaintiff reported doing well following surgery. (Tr. 242). However, she was experiencing some pain, due to a fall, during which she hit her right knee. Plaintiff indicated that her knee had basically "buckled." Dr. Akbar Hussaini noted that she was getting along well with a cane in her left hand, and had no significant limitations, aside from some pain on the medial aspect of her knee. An examination revealed some swelling about the medial aspect, but the incisions

9

appeared to be well healed. After discussing her case with the surgeon, Dr. Hussaini ordered an MRI to evaluate her for a medial meniscal tear. He also placed her in a knee immobilizer, to be used on an as needed basis. Dr. Hussaini recommended that she "get out of" the knee immobilizer daily to do some gentle range of motion passively, and continue with home therapy exercises. (Tr. 242).

As such, we cannot say that substantial evidence supports the ALJ's credibility determination. At the time of the hearing, plaintiff had been prescribed a knee immobilizer and a cane to use when she was "out and about." (Tr. 242, 330). Further, objective medical evidence reveals that plaintiff experienced chronic neck pain, for which a variety of pain medications and muscle relaxers had been prescribed. (Tr. 217). Although the ALJ alleged that plaintiff refused to undergo anterior cervical fusion when this service was offered free of charge to her by the VA, we can find no support for that statement in the record. In fact, the ALJ failed to fully develop the record concerning the reason for plaintiff's failure to undergo surgery. Social Security Ruling (SSR) 82-59, 1982 WL 31384, at * 2-3 (SSA, 1992).

As pain is a non-exertional limitation, and the ALJ found that plaintiff suffered from no non-exertional limitations, we believe that remand is necessary to allow the ALJ to reevaluate the medical evidence of record, and to reconsider the impact that plaintiff's pain has on her ability to perform work-related activities.

## **Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the plaintiff, should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

AO72A
(Rev. 8/82)

ENTERED this 27th day of March 2006.

                                              HONORABLE BOBBY E. SHEPHERD
                                              UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)